UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEI L. B.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. C18-6048 TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for a period of disability and disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court reverses defendant's decision to deny benefits and remands this matter for further administrative proceedings.

I.    <u>ISSUES FOR REVEW</u>

1. Whether the ALJ erred in evaluating the medical evidence.
2. Whether the ALJ erred in evaluating plaintiff's testimony.

II.    <u>DISCUSSION</u>

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Ford v. Saul*, 950 F.3d 1141, 1154, 1159 (9th Cir. 2020). Substantial evidence is "'such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

A. <u>The ALJ's Evaluation of Medical Opinions</u>

Plaintiff challenges the ALJ's evaluation of the medical evidence in the administrative record. Dkt. 8 at 3-10. Specifically, plaintiff contends that the ALJ erred in evaluating the opinions of Jan L. Lewis, PhD, Leslie Postovoit, PhD, Kathleen Mayers,

PhD, and Marie Ho, MD. *Id.* For the reasons set forth below, the Court finds that the ALJ erred in evaluating the medical evidence in the record.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.*

"Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [treating or examining doctors] falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion).

A plaintiff's activities of daily living may serve as a valid reason to discredit a contrary medical opinion if the activities indicate that "a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Wennet v. Saul*, 777 Fed. Appx. 875, 880 (9th Cir. 2019) (quoting *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)). However, the fact that the plaintiff has carried on certain daily activities, does not necessarily detract from the credibility of her disability, if they are not transferable to a work setting. *See, Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017).

### a. Dr. Lewis and Dr. Postovoit

First, plaintiff contends that the ALJ erred in considering Dr. Lewis' and Dr. Postovoit's opinions while assessing the plaintiff's RFC. Dkt. 8 at 3-5.

Dr. Lewis opined that plaintiff's concentration, persistence and pace were diminished by depression and pain focus. AR 82. Dr. Lewis further opined that plaintiff could maintain attention/concentration sufficient to complete routine tasks over an 8-hour workday. *Id.* However, Dr. Lewis stated that plaintiff, "would work best in small groups and occasional contact with the general public due to anxiety" and is "able to adjust to occasional/expected changes." AR 82-83. Dr. Lewis' opinion was reviewed and affirmed by Dr. Postovoit. AR 96-97.

The ALJ stated that she gave these opinions significant weight and incorporated the opinions into plaintiff's RFC. AR 30. The ALJ determined that plaintiff was limited to, "performing simple and routine tasks," "simple work-related decisions," "occasional contact with the public and occasional interactions with co-workers" and "tolerating occasional changes in a routine work setting." AR 26. Plaintiff does not challenge the ALJ's finding that these opinions are entitled to significant weight. Dkt. 8 at 3. Instead, plaintiff argues that the ALJ failed to include in the RFC that plaintiff "would work best in small groups" and that she "was able to adjust to expected changes." Dkt. 8 at 4.

The ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Here, the ALJ did not incorporate portions of Dr. Lewis' and Dr. Postovoit's opinion into plaintiff's RFC. The ALJ also did not provide any reason for discounting or rejecting these opinions.

Defendant argues that this was not error because the ALJ reasonably incorporated these limitations into the RFC and because it is the ALJ's duty to resolve ambiguities in the evidence. Dkt. 9 at 5-7. Dr. Lewis and Dr. Postovoit opined that plaintiff is limited to working in small groups and could tolerate occasional and expected changes. AR 82-83, 96-97. The ALJ stated that plaintiff was limited to "occasional interactions with co-workers" and "occasional changes in a routine work setting." AR 26. The ability to have occasional contact with co-workers does not account for the number of co-workers with whom the contact is made. One could have a job that involves only occasional contact, but requires that those occasional contacts be with a large group of individuals. Similarly, one could have a job that requires changes that are occasional but unexpected or unpredictable. Accordingly, the ALJ did not incorporate all of the limitations set forth by Dr. Lewis and Dr. Postovoit, into plaintiff's RFC. Additionally, neither defendant nor the ALJ explain how these limitations were ambiguous.

For the foregoing reasons, the ALJ erred in evaluating the medical opinions and limitations set forth by Dr. Lewis and Dr. Postovoit.

    b. <u>Dr. Mayers</u>

Next, plaintiff alleges that the ALJ erred in evaluating Dr. Mayers' opinion. Dkt. 8 at 5-7.

Dr. Mayers opined that plaintiff was "probably not fully able to manage her own funds and has poor math skills." AR 284. Dr. Mayers also observed that plaintiff's mental status exam indicated that she is capable of understanding, remembering and carrying out three-stage instructions and detailed tasks. *Id*. Next, Dr. Mayers indicated that plaintiff's judgment was fair to poor. *Id*. Finally, Dr. Mayers opined that, plaintiff

"probably could maintain attention and concentration through a normal eight-hour workday, and she would be able to tolerate minor changes in a competitive work setting." *Id.*

The ALJ gave less weight to the opinion that plaintiff could not manage her funds, because "it is inconsistent with normal mental status examinations in the file and with the claimant's ability to work part-time." AR 31. Additionally, the ALJ discounted the opinion that plaintiff's concentration was good for three-stage instructions, because it is inconsistent with "the overall record of conservative treatment and robust activities of daily living." *Id.*

Plaintiff argues that the ALJ erred by excluding from plaintiff's RFC, without explanation, Dr. Mayers' opinions that plaintiff's math skills are poor, that her judgment was fair to poor and that plaintiff could tolerate minor changes in a competitive work setting. Dkt. 8 at 6. Plaintiff also argues that the ALJ erred in rejecting Dr. Mayers opinion that plaintiff's concentration is good for three-stage directions. *Id* at 7. Plaintiff does not challenge the ALJ's rejection of Dr. Mayers' opinion that plaintiff is probably not fully able to manage her own funds.

First, the plaintiff is correct that the ALJ does not make a finding regarding Dr. Mayers' opinion that plaintiff's math skills are poor, that her judgment was fair to poor and that plaintiff could tolerate minor changes in a competitive work setting. The ALJ did not provide any reason for rejecting this portion of Dr. Mayers' opinion. Additionally, the ALJ did not incorporate these limitations into plaintiff's RFC. Accordingly, the ALJ committed error by excluding these limitations without explanation.

Next, plaintiff argues that the ALJ did not provide specific and legitimate reasons to reject Dr. Mayers' opinion that plaintiff's concentration is good for three stage directions. Dkt. 8 at 7. The only reason that the ALJ gave for discounting this opinion is that it "is not consistent with the overall record of conservative treatment and robust activities of daily living." AR 31.

Plaintiff indicated to Dr. Mayers that she was receiving mental health services at the time of the evaluation and that she had received mental health services in the past, but did not find past treatment helpful. AR 279. Additionally, the ALJ noted that plaintiff was taking "psychotropic medications" prescribed by her primary care physician in 2016, but did not seek additional treatment. AR 29, 516-520. The ALJ also noted that plaintiff reported increased mental health symptoms in 2017 and that Dr. Stoneking prescribed plaintiff Buspar. AR 29. The record also indicates that in 2017 plaintiff continued to complain of mental health concerns and was prescribed medication to treat these conditions. AR 532-38.

There is no evidence in the record indicating that the prescription of "psychotropic medication" and outpatient treatment is in fact conservative. See, e.g. *Boitnott v. Colvin*, 2016 U.S. Dist. LEXIS 110099, 2016 WL 352348 at *4 (S.D. Cal. Jan. 29, 2016)(rejecting an ALJ's characterization of a claimant's treatment as "routine and conservative" in part because "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative treatment'" of the claimant's conditions); *Childress v. Colvin*, 2014 U.S. Dist. LEXIS 130480, 2014 WL 4629593, at * 12 n.2 (C.D. Cal. Sept. 9, 2014)(stating that "[t]here is no guiding authority on what exactly constitutes 'conservative' or 'routine'

treatment," except for the use of non-prescription medications, which are "consistently viewed as 'conservative treatment'").

Additionally, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison v. Colvin*, 759 F.3d 995, 1017 n 24 (9th Cir. 2014) (quoting *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). This is because a person suffering from a mental illness may not realize that they need medication or that the condition reflects a potentially serious mental illness. *See, Nguyen*, 100 F.3d at 1465. The Social Security Administration also acknowledges that it is possible that due to a mental impairment a claimant may not be aware that they suffer from a disorder requiring additional treatment. SSR 16-3.

Accordingly, the fact that plaintiff was prescribed psychotropic medication along with outpatient treatment and did not seek additional treatment for her mental health conditions, is not a specific and legitimate reason to reject Dr. Mayers' opinion.

The ALJ also stated that Dr. Mayers' opinion was contradicted by plaintiff's "robust activities of daily living." AR 31. The ALJ does not identify what these "robust activities of daily living" are or how they contradict Dr. Mayers' opinion that plaintiff's concentration was good for three-stage instructions.

During her hearing, plaintiff stated that her daily activities included: making a bottle for her daughter, changing her daughter's diapers, making coffee, making dinner once or twice a week, and letting her dogs go outside. AR 60-62. Plaintiff stated that her responsibilities included: serving meals, taking out the garbage, cleaning the kitchen, passing out water, loading a dishwasher, and stocking a refrigerator. AR 62-63. The

ALJ does not explain how these activities of daily living are inconsistent with the opinion that plaintiff can concentrate sufficiently to complete three stage instructions. The ALJ also does not explain how these activities indicate that plaintiff can spend a substantial part of her day "engaged in pursuits involving performance of physical functions that are transferable to a work setting." Accordingly, the plaintiff's activities of daily living are also an insufficient reason to reject this portion of Dr. Mayers' opinion.

Finally, the Court notes that when discussing Dr. Mayers' opinion, the ALJ stated that Dr. Mayers' findings are "generally consistent with the residual functional capacity assessment." AR 29. This method of analysis is an error because the ALJ must consider medical evidence in assessing the RFC, and cannot then discredit such evidence because it is inconsistent with that RFC. *See Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017). "This practice 'inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC.'" *Laborin,* 867 F.3d at 1154 (quoting *Trevizo*, 862 F.3d at 1000 n.6.) (emphasis original).

Based on the foregoing, the Court finds that the ALJ's evaluation of Dr. Mayers' opinion is not supported by substantial evidence.

c. <u>Dr. Ho</u>

Plaintiff argues that the ALJ also erred in evaluating Dr. Ho's medical opinion. Dkt 8 at 7-10.

Dr. Ho evaluated plaintiff and opined that she was limited to a maximum standing/walking capacity of "at least two hours in an eight-hour workday." AR 291. Dr. Ho further stated that plaintiff's maximum sitting capacity was a total of less than six

hours in an eight-hour workday. *Id*. Dr. Ho also stated that plaintiff did not need a cane or assistive device, but may need an assistive device for long distances and uneven terrain. *Id*. Dr. Ho also opined that plaintiff's maximum lifting and carrying capacity was 10 pounds occasionally and frequently. *Id*. Additionally. Dr. Ho stated that plaintiff was limited to never climbing ladders, scaffolds or ropes and could not reach overhead, but could reach forward occasionally. *Id*. at 291-92. Next, Dr. Ho stated that plaintiff did not have any limitations in handling, fingering or feeling. *Id*. at 292. Finally, Dr. Ho opined that plaintiff would have limitations working at heights, working around heavy machinery, working around dust, fumes, gases, and working around excessive noise. *Id*.

First, the ALJ stated that Dr. Ho's opinion regarding plaintiff's standing, walking, sitting, lifting, carrying and manipulative limitations were given less weight because they are "inconsistent with the record as a whole, including imaging showing only mild degenerative changes and musculoskeletal examinations indicating good joint range of motion." AR 31. However, the ALJ did not identify specific imaging that purportedly shows only mild degenerative changes; nor did the ALJ identify any specific musculoskeletal examinations that were supportive of the ALJ's finding.

Dr. Ho's evaluation indicates mild bilateral degenerative changes in plaintiff's hips. AR 286. Dr. Ho also stated that imaging of plaintiff's spin indicates that "[d]egenrative changes are most pronounced at the thoracolumbar spine." AR 294. Here, the ALJ has failed to identify how an observation that degenerative changes in plaintiff's hips are mild is inconsistent with the limitations set forth by Dr. Ho. Accordingly, this is not a sufficient reason to discount Dr. Ho's opinion.

Additionally, Dr. Ho observed that plaintiff's range of motion was limited in her back, hip, shoulder, ankle, wrist, and right thumb. AR 290. Dr. Ho also observed that plaintiff complained of pain in these areas while testing range of motion. *Id*. The record reveals that some examinations show a limited range of motion (AR 290, 457, 476, 487, 530, 538), while others show a normal range of motion (AR 416, 427, 440, 469, 490, 504, 507, 519, 540). However, the ALJ has not explained how this inconsistency in the medical record undermines or contradicts Dr. Ho's opinion.

Dr. Ho stated that the standing, walking, sitting, carrying, and lifting limitations are based on plaintiff's back pain, spinal radiculopathy and plaintiff's hip pain and limitations. AR 291. It is not clear from the medical record how inconsistencies in plaintiff's range of motion undermine a finding of limitations based on pain and spinal radiculopathy. Additionally, Dr. Ho stated that plaintiff's manipulative limitations are based on her inability to balance, and occasional instability when walking and standing. The ALJ also does not explain how this finding is undermined by inconsistencies in the plaintiff's range of motion. Accordingly, the inconsistencies in the record regarding plaintiff's range of motion is not a sufficiently specific and legitimate reason to discredit Dr. Ho's opinion.

Next, the ALJ stated that Dr. Ho's exertional and manipulative limitations were "inconsistent with [plaintiff's] daily activities such as working part-time as a CNA and caring for a seven-month-old infant." AR 31.

First, the ALJ does not explain how preparing a bottle, changing diapers and otherwise taking care of an infant, with the assistance of plaintiff's family, contradict the exertional or manipulative limitations opined by Dr. Ho. Additionally, none of these

activities involve physical functions that are transferable to a work setting. Accordingly, the plaintiff's ability to take care of her infant is not a valid reason to discredit Dr. Ho's opinion.

The ALJ also stated that plaintiff's part-time position as a CNA contradicts Dr. Ho's opinion. Plaintiff indicates that her work activities include: serving dinner, taking out garbage, cleaning the kitchen, passing out water, loading the dishwasher and stocking a refrigerator. AR 62-63. Plaintiff also indicated that she is standing or walking during these duties for about an hour. AR 62. The ALJ provided no explanation regarding how these part-time duties contradict the limitations set forth by Dr. Ho. Additionally, there is no indication from the ALJ's decision or from the record that the plaintiff's position as a CNA require her to spend a "substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Accordingly, plaintiff's position as a part-time CNA is not a valid reason to reject the exertional and manipulative limitations set forth by Dr. Ho.

The ALJ also asserted that Dr. Ho's statement regarding the use of an assistive device is unpersuasive because "treatment notes documented a normal gait." AR 31. The ALJ does not identify which treatment notes purportedly document a normal gait. However, Dr. Ho's treatment notes document that plaintiff walks with a limp due to pain and loses her balance easily. AR 288-290. The ALJ does not identify a treatment note documenting that plaintiff has a normal gait and does not provide another reason explaining why Dr. Ho's opinion is "unpersuasive." Accordingly, the ALJ has not provided a valid reason for discounting Dr. Ho's opinion regarding the plaintiff's need for an assistive device.

The ALJ stated that Dr. Ho "did not sufficiently explain or support the limitations he assessed concerning pulmonary irritants and noise." AR 31. An ALJ may reject a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); see also *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that statement that the plaintiff would have "decreased concentration skills" was too vague to be useful in the disability determination); 20 C.F.R. § 404.1527(c)(3). Here, Dr. Ho only briefly discusses plaintiff's reported anxiety and depression but does not indicate how these conditions limit plaintiff's ability to be exposed to pulmonary irritants and noise. Dr. Ho also does not explain what "physical problems" require plaintiff to avoid pulmonary irritants and noise. Accordingly, the ALJ has provided a sufficient reason to discount Dr. Ho's finding that plaintiff must avoid pulmonary irritants and excessive noise.

Finally, the Court notes that while discussing the medical evidence the ALJ stated that Dr. Ho's findings were "generally consistent with the limitations assessed in the residual functional capacity." AR 28. This method of analysis is an error because the ALJ must consider medical evidence in assessing the RFC, and cannot then discredit such evidence because it is inconsistent with that RFC. *See Laborin*, 867 F.3d at 1153-54. "This practice 'inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC.'" *Laborin,* 867 F.3d at 1154 (quoting *Trevizo*, 862 F.3d at 1000 n.6.) (emphasis original).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 13

1 | Based on the foregoing, the Court finds that the ALJ committed error in
2 | evaluating Dr. Ho's opinion.

### B. The ALJ's consideration of plaintiff's testimony

Next, plaintiff contends that the ALJ erred in evaluating plaintiff's testimony. Dkt. 8 at 10-13.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms to some degree. AR 27. Therefore, the ALJ was required to provide specific clear and convincing grounds for discrediting the plaintiff's testimony regarding the severity of her symptoms. The ALJ found that plaintiff's activities, when considered with the medical evidence, are inconsistent with plaintiff's symptom testimony.

Plaintiff alleges that the ALJ committed error by discrediting the plaintiff's testimony. However, because this case must be remanded for a proper evaluation of the medical evidence, this could potentially change the ALJ's credibility determination.

1 Accordingly, the Court declines to consider whether the ALJ erred in discrediting the plaintiff's testimony.

### C. Harmless Error

The errors identified in this Order are not harmless. *Carmickle*, 533 F.3d at 1162 ("the relevant inquiry in this context is … whether the ALJ's decision remains legally valid, despite such error."). It is unclear whether an appropriate evaluation of the evidence would cause the ALJ to change the hypotheticals provided to the Vocational Expert, and potentially change the RFC. Therefore, the ALJ's decision is not legally valid.

### D. Remand With Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

The Court has determined that on remand the ALJ must re-evaluate the medical opinions of Dr. Lewis, Dr. Postovoit, Dr. Mayers, and Dr. Ho, as well as plaintiff's testimony. Therefore, there are outstanding issues which must be resolved and remand for further proceedings is appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 30th day of March, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge